## In re Anonymous No. 129 D.B. 90

Disiplinary Board Docket No. 129 D.B. 90.

*Hearing Committee,* June 18, 1992—

### I. *Summary*

In these proceedings, the respondent, [   ], has been charged with a violation of R.P.C. 8.2(a), 8.2(b), 8.2(c) and 8.4(c).

The issues before the committee fall into two areas. The first concerns the direct solicitation of campaign financing by an individual who is a candidate for a judicial position. The second issue involves the publication of material, allegedly false or misleading, about a sitting judge where the campaign was basically in the hands of a higher consultant who had extensive experience in prior judicial campaigns.

The committee concludes that the respondent has violated R.P.C. 8.2(c) in that he personally solicited contributions for his campaign. The committee also concludes that the respondent violated R.P.C. 8.2(a) and 8.2(b) because of the statements made about the sitting judge who was being opposed in the campaign by the respondent.

Based on the entire record before it, the Hearing Committee recommends that this matter be concluded with the imposition of a private reprimand to the respondent.

## II. *Statement of the Case*

An evidentiary hearing was held on October 17, 1991. [    ], Esq., a member of the Hearing Committee, was unable to attend because of serious illness in the family. The parties stipulated to 18 separate findings of fact and 18 separate exhibits.

[A], general counsel and executive director of [B], testified on behalf of petitioner. The respondent testified on his own behalf and also presented the testimony of [C], his campaign manager.

Petitioner filed a brief. By letter dated February 14, 1992, and received by the Hearing Committee on February 19, 1992, the respondent waived his right to file a brief and consented to the recommended discipline of a private reprimand.

In the course of his judicial campaign the respondent sent two letters requesting campaign contributions. The respondent was personally involved and responsible for sending those two letters.

R.P.C. 8.2(c) provides that a lawyer who is a candidate for judicial office shall comply with the provisions of Canon 7 of the Code of Judicial Conduct. Canon 7B(2) provides in part that a candidate for judicial office that is filled by public election between competing candidates should not solicit or accept campaign funds.

The petitioner has also alleged that the respondent violated R.P.C. 8.2(a), 8.2(b), 8.2(c) and 8.4(c) because of the advertisements that were run during the course of the judicial campaign. Those advertisements were newspaper ads, radio spots and handbills. The common theme

throughout the advertisements was that the judge handling those matters, who was the opponent of the respondent, mishandled two cases dealing with rape and child molestation.

The advertising and public relations portion of the campaign had been turned over to a political consultant. The political consultant, [C], put together the advertisements. While some of the advertisements were reviewed by respondent, various other advertisements were not shown to him.

During the course of the campaign, respondent was contacted concerning certain statements that appeared on billboards. The respondent ordered the advertisement removed from the billboard even though his political consultant advised him against it.

In its brief the petitioner suggests that the respondent, through the advertisements, violated R.P.C. 8.2(a), 8.2(b), and 8.2(c). The petitioner does not propose that there be a violation of R.P.C. 8.4(c).

The committee in this report has found a violation of R.P.C. 8.2(a), 8.2(b) and 8.2(c).

### III. *Rulings on Admission of Evidence and Procedural Matters*

Petitioner and respondent stipulated to 18 findings of fact and 18 exhibits. It should be noted that finding of fact no. 18 was amended at the hearing to reflect the correct election date of May 16, 1989, as opposed to the signed stipulation date of May 14, 1989.

The respondent objected to certain testimony by [A] concerning the harm or the particular issue that Canon 7-B(1)(c) concerned. That objection was sustained.

An objection was raised by petitioner to the testimony of [C] concerning some hearsay testimony. The respon-

dent proposed to offer the testimony, not for the truth of the matter asserted, but merely to explain why the witness did what he did. Based on the fact that the testimony was not being offered for the truth of the matter asserted, the objection was overruled.

The next evidentiary ruling concerned testimony by the respondent concerning his mindset at the time the election was going on. The petitioner objected to the testimony if it was being offered for the truth of the matter asserted. The testimony was accepted solely on the basis of understanding the position of the respondent while the election was going on.

At the conclusion of the testimony, counsel for the respondent indicated that he might not file a brief. In fact, he advised the board that he was waiving the right to file a brief.

The chairman of the Hearing Committee raised a question concerning the use of judicial stationery by the opponent of the respondent in the judicial campaign. Counsel for the petitioner advised the chairman of the Hearing Committee that there was no evidence in the record to indicate any violation. A copy of the letter dated January 15, 1992, is attached to this report.

The final matter concerned the agreement of the parties that the evidence presented was to cover both the issues of violation and, if a violation was found, the discipline to be imposed.

## IV. *Findings of Fact*

(1) The respondent, [    ] Esq., was born in 1941, was admitted to practice law in the Commonwealth on March 22, 1968, and maintains his office at [    ].

(2) In the spring of 1989, respondent was a declared candidate for the office of judge of the Court of Common Pleas of [ ] County, Pennsylvania.

(3) Another candidate for the same office was the incumbent, the Honorable Judge [D], who occupied the office by gubernatorial appointment at the time.

(4) [C] was hired by the [respondent] committee to conduct and advise advertising and public relations matters, and had almost complete control over the contents of the advertisements used in the campaign.

(5) [C] is the owner of a political consulting firm and had been involved in 48 political campaigns, including 15 for judicial candidates.

(6) [C] wrote and arranged for the publication of all advertisements published by respondent's campaign.

(7) Respondent's agreement with [C] gave [C] almost complete control over the content of all advertisements used in the campaign.

(8) While [C] normally gave respondent a copy of the ads, that was not done for all the ads.

(9) The respondent questioned [C] about the ads being improper but relied on [C] to prepare proper ads.

(10) In late March or early April 1989, respondent caused or allowed a mass mailing to be made to [ ] County residents of a letter, signed by respondent, by which he personally and directly solicited residents to contribute money to his judicial campaign.

(11) On other occasions during April and May 1989, the respondent's campaign made mailings to targeted groups or the general public, each containing a personal solicitation from respondent of funds for his judicial campaign.

(12) Respondent initiated the letters containing personal solicitation of funds and is solely responsible for those actions.

(13) In early April 1989, respondent's campaign, with his knowledge and consent, published a number of advertisements in various media including newspapers of general circulation in [ ] County and billboards placed at various locations in [ ] County, which stated: "[Respondent]—Judge!" One such advertisement was printed in the [E] on April 10, 1989. The slogan "[Respondent]—Judge!" was used many times in the respondent's campaign advertisements.

(14) Shortly before or on April 19, 1989, respondent's campaign, with respondent's knowledge and consent, modified some of the billboards referred to in paragraph 6, above, to include the slogan or promise, "I'll Put Child Molesters in Jail!" This slogan was subsequently used several times in various ways by respondent's campaign.

(15) When contacted by the [B] and the Office of Disciplinary Counsel about the message "I'll Put Child Molesters in Jail" added to his billboards, respondent directed [C] to remove the slogan, but did not direct him to discontinue the theme of attacking Judge [D's] handling of the [F] case.

(16) In late April 1989, respondent's campaign, with respondent's knowledge and consent, began referring in a variety of media to a criminal case involving one [F], who was convicted by the Court of Common Pleas of sexually molesting a six-year-old girl. Beginning about April 28, 1989, respondent's campaign, with respondent's knowledge and consent, made Judge [D's] handling of the [F] case a major theme in his advertisements.

(17) The pertinent facts of the [F] case, docketed to no. 962 of 1987, were as follows:

(a) [F] molested the child in question in Ohio during November and/or December 1986.

(b) [F] then molested the same child again in [   ] County, Pennsylvania, during November and/or December 1987.

(c) Criminal charges of rape based on the second (Pennsylvania) incident(s) were filed in [   ] County of December 7, 1987.

(d) District Justice [G] set [F's] bond at $10,000 and the bond was posted on January 22, 1988.

(e) [F] appeared to defend the Pennsylvania criminal charges on each occasion when his appearance was required.

(f) [F] went to trial and was found guilty by a jury in the court of common pleas on November 22, 1988.

(g) After the jury verdict was announced, the district attorney suggested an increase in bond to $30,000. Judge [D] decided to allow the bond to remain at $10,000.

(h) On February 22, 1989, a grand jury in [   ] County, Ohio, returned an indictment against [F] for the incident(s) occurring in Ohio in November/December 1986.

(i) On March 25, 1989, [F], who was in Ohio in violation of the conditions of his bond, was arrested in Ohio.

(18) Beginning about April 28, 1989, respondent's campaign placed radio advertisements on [   ] County radio stations in which a male and a female voice read the following simulated conversation:

*Male:* Did you hear the commercial for appointed Judge [D]?

*Female:* (laughs) You mean the one that says he's been a good judge?

*Male:* Yeah.

*Female:* The nerve.

*Male:* Yeah, a good judge. He's the one who set free that [F] guy at a low bond instead of throwing him in jail.

*Female:* Then [F] escaped.

*Male:* To Ohio where he was arrested for molesting the same six-year-old girl.

*Female:* I'm voting for [respondent] for judge.

*Male:* That's two of us. [Respondent] would never let a convicted child molester go free.

*Female:* Yeah—Judge [respondent] sounds good.

*Male:* Yep, and a lot better than what we have now.

*Voiceover:* Paid for by [respondent] Committee.

(19) On April 30, 1989, a number of [    ] County newspapers including the [H] and the [I] ran an advertisement, placed by respondent's campaign with respondent's knowledge and consent, showing pictures of [F] and Judge [D], and setting forth the following text:

## "A TRAGEDY IN OUR COURT"

"[F] was convicted by a [    ] County jury on October 7, 1988, for the savage and repeated rape and sexual abuse of a little six-year-old [    ] girl.

## "APPOINTED JUDGE [D] SET [F] FREE ON A LOW BOND."

"[F] ran away before sentencing."
"Six months later, [F] was arrested in Ohio—
*for having raped the same little girl!"*
"[Respondent]—JUDGE!"

"I'll Put Convicted Child Molesters in Jail ..."
"Where They Belong!"

(20) [C] conducted interviews of certain parties regarding the [F] case, but did not review the documents setting forth the facts of the Ohio indictment, misinterpreted the facts of that case, and wrote advertisements about the case reflecting that lack of understanding.

(21) [C] was unaware of the sentencing provisions for individuals convicted of sex crimes against children and his advertisement that [J] could be on the street in "just months" was based on a false premise.

(22) Respondent did not believe the information in the ads was inaccurate or false.

(23) On May 2, 1989, [A], Esq., executive director and general counsel of the Pennsylvania [B], wrote to respondent to advise him that information his office had received about the above advertisements indicated that the campaign was being run in disregard of the prohibitions of Canon 7 of the Code of Judicial Conduct, and warning respondent that his actions would be subject to disciplinary examination if he were elected. [A] requested that respondent initial and return a copy of this letter, which respondent did not do.

(24) In early May 1989, respondent's campaign, with respondent's knowledge and consent, published an advertisement in several [   ] County newspapers bearing the caption, "The Truth," which labeled Judge [D's] contention that he had not set the bond in the [F] case an "untruth" and set forth an excerpt from the colloquy held on October 7, 1988, regarding [F's] bail.

(25) On May 7, 1989, a number of [   ] County newspapers including the [I], the [K], the [L], and the [M] printed an advertisement placed by respondent's campaign,

with respondent's knowledge and consent. The advertisement read as follows:

"Courthouse Secret:"

"[D] Does it *Again!*"

"By now you know my opponent, appointed Judge [D], set free on a low bond a convicted child rapist. The man escaped and was arrested in Ohio for having raped the same six-year-old girl!

"But most citizens don't know about this: In still another case, this appointed Judge [D] gave another child rapist a sentence that could allow him to be walking our streets again in just months! That man, like the other, was convicted by a [    ] County Jury. *His* victim was only 12 years old.

"These little girls cry out for justice."
"They cannot vote."
"You can."
"[Respondent]"
"Judge!"
"I'll put convicted child molesters in jail—Where they belong!"

The advertisement cited Court of Common Pleas Docket no. [    ] as the source of this information.

(26) No. [    ] in the Court of Common Pleas of [    ] County was the case of *Commonwealth v. [J]*. In this case, Judge [D], on January 30, 1989, sentenced a defendant convicted of rape of a child to imprisonment for a term of not less than five and no more than 20 years. This offense carried a minimum sentence of five

years under 42 Pa.C.S. §9718(a), and a maximum of 20 years under the terms of 18 Pa.C.S. §1103. By requirement of 42 Pa.C.S. §9718(b), [J] would not be eligible for parole until he served the minimum sentence.

(27) On May 8, 1989, respondent again allowed a letter bearing his signature to be sent to numerous members of certain groups including the [N] and to the general public, in which he again personally requested contributions in support of his judicial campaign.

(28) In response to respondent's campaign, Judge [D's] campaign published a series of advertisements replying to the allegations of respondent's advertisements.

(29) The election was held May 16, 1989. In this election, Judge [D] defeated respondent in the race for the judicial seat.

(30) Respondent read through Canon 7 of the Code of Judicial Conduct at some point prior to or early in his campaign, but did not have a thorough knowledge of the standards set forth in that section and relied on [C's] knowledge of the requirements of Canon 7 and experience with judicial campaigns.

(31) The respondent had the ultimate responsibility for the campaign.

## V. *Discussion*

The matters before this committee can be broken down into two factual areas. The first factual area deals with the solicitation of campaign funds. The second area deals with the advertisements that were used in the campaign.

R.P.C. 8.2(c) provides that a lawyer who is a candidate for judicial office shall comply with the applicable provisions of Canon 7 of the Code of Judicial Conduct. Canon 7(B)(2) provides that a candidate for judicial office

that is filled by public election between competing candidates should not himself solicit or accept campaign funds. Stipulation exhibits nos. 1 and 14 are clearly personal solicitations of funds. While the respondent had used the same approach to raise funds for non-judicial campaigns, Canon 7(B)(2) clearly prohibits the personal solicitation of campaign funds. As such, there is a violation of R.P.C. 8.2(c).

The second factual scenario concerns the various advertisements that occurred during the course of the political campaign. Those advertisements included the following:

(1) "I'll put child molesters in jail." (Stipulation exhibit no. 4.)

(2) A radio advertisement that said in part, "[respondent] would never let a convicted child molester go free." (Stipulation exhibit no. 8.)

(3) An advertisement that said, "I'll put convicted child molesters in jail ... where they belong." (Stipulation exhibit no. 9 and 12.)

The advertisements by their very words violate Canon 7(B)(1)(c) which provides that a candidate should not make pledges or promises of conduct in office other than faithful and impartial performance of the duties of the office. There is, therefore, a violation of R.P.C. 8.2(c).

Various other advertisements set forth statements which were at least misleading, if not false. For example, the radio advertisement seems to imply that the opponent of the respondent set a low bond, the individual escaped and then molested the same child in Ohio. Actually, bond was merely continued and the molesting that occurred in Ohio took place prior to the Pennsylvania conviction.

Another example is the advertisement that stated that an individual was given a "sentence that could allow

him to be walking our streets again in just months!" (Stipulation exhibit no. 12.) As stipulation exhibit no. 12 shows, the individual was sentenced to not less than five years, nor more than 20 years. By law, the individual would not be eligible for parole until he had served the minimum sentence of five years.

The common perception of the term "just months" indicates something of a short term. It is at the very least misleading.

The above would indicate a violation of Canon 7(B)(1)(c) as it misrepresents a fact and hence, a violation of R.P.C. 8.2(c).

In addition, an advertisement explicitly accused the respondent's opponent of not telling the truth.

Those advertisements, in addition to violating Canon 7, are independent violations of R.P.C. 8.2(a) and 8.2(b).

If those advertisements had been directly prepared by the respondent, the case would be clear. However, the advertisements and public relations aspect of the campaign were basically under the control of [C], the campaign manager. [C] had extensive experience in political campaigns, including judicial campaigns. [C] apparently also has a view of political campaigns that is to win at all costs. As he stated, "You can't tell me how to run a political campaign for any office because I am hired to win, not to abide by silly rules on this."

There are rules and the rules are not silly. The rules are needed to maintain the integrity of the judicial office.

R.P.C. 5.3 states in part as follows:

"With respect to a non-lawyer employed or retained by or associated with a lawyer....

"(b) a lawyer having direct supervisory authority over the non-lawyer should make reasonable efforts to ensure

that the person's conduct is compatible with the professional obligations of the lawyer; and

"(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:

"(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

"(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and in either case knows of the conduct at a time when its consequences can be avoided or mitigated but fail to take remedial action."

Canon 7(B)(1) states:

"A candidate ... for a judicial office that is filled either by public election between competing candidates or on the basis of merit system election:

"(b) should prohibit ... employees subject to his direction or control from doing what he is prohibited from doing under this Canon; and ... should not allow any other person to do for him what he is prohibited from doing under this Canon."

The control of the advertising and public relations aspect of the campaign were turned over almost completely to [C]. While the respondent did review some of the advertisements, he did not review all of the advertisements. The general tone of the campaign was set by [C] and that general tone of the campaign never ceased. The respondent is to be congratulated for ordering certain billboard advertisements to be removed when the situation was brought to his attention.

However, as the respondent testified, he was ultimately responsible for the campaign. He did not verify the truth of the statements being made in the campaign concerning the allegations against the other candidate. He did not

require that all advertisements be verified. He did not require that his paid consultant "abide by silly rules."

The conduct of the respondent was more of an omission rather than direct action. However, the respondent's conduct did violate R.P.C. 5.3 and Canon 7.

## VI. *Conclusions of Law*

(1) Under the terms of R.P.C. 5.3, Pa.R.D.E. 203(a), and Canon 7(B)(1)(b) of the Code of Judicial Conduct, respondent is ethically responsible for [C's] actions to the extent that he:

(a) Failed to take reasonable steps to assure that [C's] actions were compatible with his own ethical responsibilities;

(b) Directed [C's] actions;

(c) Ratified [C's] actions; or

(d) Failed to take reasonable remedial action for any violations of the Rules of Professional Conduct or the Code of Judicial Conduct of which Respondent became aware.

By his own actions or those of [C] for which he was responsible under the terms of R.P.C. 5.3, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 8.2(a), which provides that a lawyer shall not knowingly make false statements of fact concerning the qualifications of a candidate for election to a judicial office;

(2) R.P.C. 8.2(b), which provides that a lawyer shall not knowingly make false accusations against a judge; and

(3) R.P.C. 8.2(c), which provides that a lawyer who is a candidate for judicial office shall comply with the applicable provisions of Canon 7 of the Code of Judicial Conduct.

## VII.  *Recommended Disposition*

The Hearing Committee was impressed with the integrity and sincerity of the respondent.  The record reflects that the respondent is a member of another [    ] of the Disciplinary Board.  There is no evidence in the record to indicate that the respondent had ever engaged in activities of this type before.

The respondent had been involved in running on numerous occasions in the past.  He had always used a direct solicitation of funds approach.  He did it in the judicial campaign.  That was improper.  He admits it was improper.  We find nothing in the record to indicate that the respondent intentionally disregarded Canon 7.  The record reflects that it was something that happened because of his past campaigns and a failure to read and fully understand Canon 7.

If the campaign advertising had been put together by respondent, then a very serious penalty would be recommended.  We. agree with counsel for the petitioner that with respect to the advertising campaign the responsibility of the respondent is vicarious.

Counsel for the petitioner, in his brief, has indicated to the Hearing Committee that this is a case of first impression in Pennsylvania.  He very ably expresses his concern over campaigns for judicial office.  He believes that an individual should not be completely excused.  To do so would allow a campaign consultant to run any type of campaign no matter how contrary to the rules.

Counsel further expresses a concern that this matter will probably be published and should provide guidance and warning to future candidates and their consultants that violations of the Rules of Professional Conduct and the Code of Judicial Conduct will not be excused because they are committed by consultants.

478

We agree.

Counsel for the petitioner has recommended that this matter be concluded with the imposition of a private reprimand on the respondent.

Again, we agree with counsel.

It is, therefore, the recommendation of this Hearing Committee that a private reprimand be issued to the respondent.

## ORDER

And now, June 18, 1992, upon consideration of the report and recommendation of Hearing Committee [    ] filed April 7, 1992; it is hereby ordered that the said [respondent] of [    ] County be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by the respondent.

Messrs. Schiller and Hill dissent on First Amendment grounds.

Mses. Lieber and McGivern dissent for public censure.